NORTH CAROLINA STATE HIGHWAY COMMISSION v. HILDA COOPER
HETTIGER AND HUSBAND, E. P. HETTIGER; J. H. WHICKER, JR.,
TRUSTEE; NORTHWESTERN BANK; RAY JENNINGS, TRUSTEE; AND
J. H. C. HUITT.

(Filed 24 July, 1967.)

**1. Eminent Domain § 13—**

Title to property condemned for highway purposes passes at the time of
the filing of the complaint and declaration of taking by the Highway
Commission and the deposit by it into court of the amount estimated by
it as just compensation. G.S. 136-104.

**2. Eminent Domain § 14—**

The right to compensation for property taken for highway purposes
vests in the persons owning the property at the time title passes to the
Commission, and their right to compensation is limited to such interest
as they own at the time of the taking.

**3. Same;　Eminent Domain § 5—**

Respondents sold a part of their tract of land to third persons prior to
the time the Highway Commission acquired title to the remaining
tract. Respondents alleged that the price obtained by them for the
tract sold prior to the taking was greatly decreased because of public
knowledge that the Commission had decided upon the location for the
limited access highway and the taking of property therefor. *Held:* G.S.
136-104 provides compensation on the basis of the date title vests in the
Commission, and respondents are not entitled to compensation in regard
to land conveyed by them to third persons prior to such date.

**4. Same—**

Respondents may not by agreement made in anticipation of the con-
demnation of a portion of their property change the statutory provision
relating to the time of and the basis for compensation to be paid upon
the condemnation of the property.

**5. Same—**

Allegations of unwarranted delay and *mala fides* on the part of em-
ployees of the Highway Commission in effecting a condemnation of re-
spondents' land are irrelevant to the determination of what constitutes
just compensation for the property condemned for highway purposes.

ON *certiorari* to review an order entered by *Lupton, J.,* at Sep-
tember 1966 Civil Session of WILKES.

The North Carolina State Highway Commission (Commission)
instituted this civil action March 5, 1965, pursuant to G.S. 136-19
and G.S. 136-103 *et seq.,* to acquire for highway purposes the fee
simple title to certain lands in Wilkes County owned by defendants
Hettiger. Simultaneously with the filing of the complaint and dec-
laration of taking, the Commission deposited with the Clerk of the
Superior Court of Wilkes County the sum of $14,250.00, the sum
estimated by the Commission to be just compensation for said tak-

ing. The named defendants other than defendants Hettiger filed disclaimers in which they asserted the indebtedness secured by certain deeds of trust executed by defendants Hettiger had been paid and that they had no further interest in the property involved in this proceeding.

The "Description of Property Affected" is set forth in Exhibit B of the complaint and declaration. The property is described as being those parcels of land "retained by E. P. Hettiger, Jr., and wife, Hilda C. Hettiger, *by way of an exception* contained in the deed dated July 13, 1964, to George B. Collins and wife, Ida M. Collins, and C. E. Ashley and wife, Ruth Ashley, recorded in Book 425, page 211, Wilkes County Registry; said description being specifically incorporated herein by reference." (Our italics.)

In their answer proper, defendants Hettiger, hereafter referred to as "defendants," assert the tract of land described in said Exhibit B is not "the only land affected by the taking." They alleged, as a further answer and "by way of affirmative relief," the following:

"I. That prior to the 13th day of July, 1964, the defendants were the owners of a tract of land containing 79.80 acres acquired from D. J. Brookshire and wife, Rebecca Brookshire, said land being specifically described in a deed recorded in Book 209, page 627, Wilkes County Registry, reference to which deed is hereby made for more exact description, and were also the owners of Lots 1 through 8 inclusively as shown and described on map of the Duane Church subdivision of the D. J. Brookshire farm, said lots being specifically described in the deed recorded in Book 430, page 223, Wilkes County Registry, reference to which deed being hereby made for more complete description.

"II. That these defendants had constructed their home on a portion of said lands at a cost in excess of $105,000.00; that they had erected and constructed other farm buildings on said lands at a cost in excess of $75,000, and that prior to the time the plaintiff located its Project No. 8.17824 in such a manner as to go across the lands of these defendants, the reasonable market value of said lands was in excess of $250,000.00.

"III. That, prior to the 13th day of June, 1964, the plaintiff selected the route for its Project No. 8.17824, which was a relocation of U. S. Highway 421, so as to go across the north side of the defendants' property and to form a so-called 'clover leaf' intersection of U. S. Highway 421 and Highway 115 at the west end of the defendants' property. That the property owned by the defendants fronting on Highway 115 was placed in a controlled access area so that the same could not be utilized by the defendants. That the plaintiff, during the year 1963, conducted meetings at the City Hall

in North Wilkesboro and at other public places, in which it exhibited maps showing the location of new Highway 421 and apprised and notified the public in general of its intention to construct new Highway 421 in accordance with the location shown on maps it exhibited. That the plaintiff began negotiations with property owners through whose lands new Highway 421 would be located and acquired rights of way from the property owners during 1963. That the plaintiff commenced actions against other property owners affected by said project to condemn and appropriate lands necessary for said project during 1963.

"IV. That for a number of years prior to 1964, the defendants were the owners of businesses connected with the poultry industry, including a hatchery, feed mill, processing plant, poultry farm and related businesses. That during the Fall of 1963, and continuing into the Fall of 1964, the poultry industry was depressed and unprofitable.

"V. That, after it became publicly known that the plaintiff had decided upon a location of new Highway 421 which would lead across the defendants' farm and prevent the defendants from utilizing any of their road frontage on Highway 115, the reasonable market value of the defendants' property declined at least $120,000.00.

"VI. That the plaintiff, as these defendants are advised and believe, and therefore allege, knew that these defendants were having to go out of business and were having to dispose of their property in order to pay obligations of their businesses for which they were personally liable. That the plaintiff had caused an appraisal to be made of the defendants' property, which appraisal, as these defendants are advised, disclosed that the defendants' property was being damaged in an amount in excess of $50,000, because of the taking of the lands of the defendants necessary to relocate Highway 421. That, although the plaintiff had the appraisal made, it did not contact these defendants, knowing that the defendants would have to dispose of their property in order to pay obligations incurred in their business.

"VII. That, because the relocation of Highway 421 caused the new Highway to be constructed through their property, the defendants were forced to sell their property at a price at least $100,000 less than they would have received if the plaintiff had located its project at another site, and that under the terms of their sales contract, the defendants retained the right to all damages occasioned by the construction of the highway through their premises.

"VIII. That the defendants retained title to the lands actually taken by the plaintiff in its Project No. 8.17824, which lands are described in the complaint, that they are entitled to full compensa-

tion for that part of their property taken by the plaintiff and are entitled to the decreased value of the property sold on the 13th day of July, 1964, to George B. Collins and wife, Ida M. Collins, and C. E. Ashley and wife, Ruth Ashley."

A motion to strike filed by the Commission was allowed in its entirety. Defendants' assignments of error relate to the part of the court's order which, except as to formal and immaterial clauses, strikes all of defendants' further answer.

Defendants filed a petition in this Court for writ of *certiorari* to review Judge Lupton's ruling. The Commission attached to its answer to said petition what purports to be a copy of an agreement dated June 13, 1964, between E. P. Hettiger, Jr., and wife, Hilda C. Hettiger, therein called "Seller," and George B. Collins and C. E. Ashley, therein called "Purchaser," recorded in Book 425, Page 133, Wilkes County Registry, and also what purports to be a copy of a deed dated July 13, 1964, recorded in Book 425, Page 211, said registry, from E. P. Hettiger, Jr., and wife, Hilda C. Hettiger, to George B. Collins and wife, Ida M. Collins, and C. E. Ashley and wife, Ruth Ashley.

This Court, allowing defendants' petition for *certiorari*, set the case for hearing with regular appeals from the Twenty-Third Judicial District, Spring Term 1967.

*Attorney General Bruton, Deputy Attorney General Lewis, Trial Attorneys Briley and Hensey, and Associate Counsel E. James Moore for plaintiff appellee.*
*Whicker, Whicker & Vannoy for defendant appellants.*

BOBBITT, J. In passing on the Commission's motion to strike, the facts alleged in defendants' further answer are deemed admitted. The question is whether these facts entitle defendant to recover compensation in excess of the fair market value as of March 5, 1965, of the property described in said Exhibit B. See G.S. 136-106(a)(3). If not, the order of Judge Lupton striking the further answer should be affirmed.

G.S. 136-104, in pertinent part, provides: "Upon the filing of the complaint and the declaration of taking and deposit in court, to the use of the person entitled thereto, of the amount of the estimated compensation stated in the declaration, title to said land or such other interest therein specified in the complaint and the declaration of taking, together with the right to immediate possession hereof shall vest in the State Highway Commission and the judge shall enter such orders in the cause as may be required to place the Highway Commission in possession, and said land shall be deemed to be

condemned and taken for the use of the Highway Commission and the right to just compensation therefor shall vest in the person owning said property or any compensable interest therein at the time of the filing of the complaint and the declaration of taking and deposit of the money in court, and compensation shall be determined and awarded in said action and established by judgment therein." This portion of G.S. 136-104 is based on Chapter 1025, Session Laws of 1959.

Prior to the enactment of said 1959 Act, title was not divested until compensation was paid; and the person who owned the property when the award was confirmed was the person to be compensated. *Highway Commission v. Industrial Center*, 263 N.C. 230, 139 S.E. 2d 253. In the cited case, Rodman, J., after noting the changes made by the enactment of statutes now codified as G.S. Chapter 136, Article 9, and after quoting the above portion of G.S. 136-104, says: "Now the right to compensation rests in the person who owned the land immediately prior to the filing of the complaint and declaration of taking."

Upon the filing of the complaint and declaration of taking and deposit in court on March 5, 1965, the title to the property described in Exhibit B, the only property then owned by defendants, vested in the Commission. Admittedly, defendants are entitled to compensation for this property.

Emphasizing the words, "compensable interest therein," in the quoted portion of G.S. 136-104, defendants contend they have an additional *compensable interest* growing out of their prior ownership of the property they conveyed to Collins and Ashley. The statute affords no basis for this contention. It provides the right to just compensation for the property condemned "shall vest in the person owning *said property* or any compensable interest *therein* at the time of the filing of the complaint and the declaration of taking and deposit of the money in court." (Our italics.) The *compensable interest* referred to in the statute is an interest *in the property condemned*. The only property being condemned in this action is that described in said Exhibit B.

G.S. 136-112 prescribes the rule for determining what constitutes just compensation, *viz.:* "(1) Where only a part of a tract is taken, the measure of damages for said taking shall be the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking, with consideration being given to any special or general benefits resulting from the utilization of the part taken for highway purposes. (2) Where the entire tract is taken the measure of damages for said taking shall be the fair market value

of the property at the time of taking." The court's instructions in *Highway Commission v. Pearce,* 261 N.C. 760, 136 S.E. 2d 71, were approved as in accord with G.S. 136-112(1).

What constitutes just compensation to defendants is determinable on the basis of conditions existing on March 5, 1965, the date title vested in the Commission and the right to compensation vested in defendants. The property described in said Exhibit B is *all,* not a part, of the property owned by defendants on that date. Although defendants, prior to July 13, 1964, owned a larger tract which included the property described in said Exhibit B, on the determinative date, March 5, 1965, the property taken by the Commission was a separate tract in which only defendants had title or interest. In *Barnes v. Highway Commission,* 250 N.C. 378, 109 S.E. 2d 219, cited by defendants, Moore, J., in his discussion of rules "for determining the unity of lands for the purpose of awarding damages or offsetting benefits in eminent domain cases," says: "The parcels claimed as a single tract must be owned *by the same party or parties."* (Our italics.)

It is noteworthy that Collins and Ashley, or their successors in title, notwithstanding no portion of their property is being condemned, will actually receive, appertaining to the property conveyed to them by defendants on July 13, 1964, all special and general benefits resulting from the utilization of the property described in Exhibit B for highway purposes.

Defendants cite *Powell Appeal,* 385 Pa. 467, 123 A. 2d 650; *Covert Appeal,* 409 Pa. 290, 186 A. 2d 20; and *Empie v. United States,* 131 F. 2d 481 (4th Cir. 1942). The factual situation in each of these cases is readily distinguishable. Suffice to say, they involve a transfer of the *entire* tract of land prior to the condemnation proceedings. In the Pennsylvania decisions the principal controversy related to the interpretation of provisions in the contract between seller and purchaser concerning which of them should receive compensation for a condemnation. The basis for determining the amount of compensation was not involved. In the *Empie* case, the seller did not attempt to reserve a right to a claim for compensation.

Defendants could not, by agreement made in anticipation of the condemnation of a portion of their property, change the statutory provisions relating to the time of, and basis for, the compensation to be paid when the Commission condemns the property for highway purposes. Nor are these statutory provisions affected by conditions peculiar to defendants, such as their alleged financial reverses and difficulties.

Certain of defendants' allegations are to the effect that there was inconsiderate and unwarranted delay on the part of the Com-

mission in its negotiations with defendants and in instituting the condemnation action. These allegations, suggestive of improper conduct on the part of employees of the Commission, are irrelevant to the determination of what constitutes just compensation for property condemned for highway purposes.

For the reasons stated, the compensation to which defendants are entitled is determinable in accordance with G.S. 136-112(2). Hence, the order of Judge Lupton must be and is affirmed.

Affirmed.