DEPARTMENT OF TRANSPORTATION, Plaintiff v. CURTIS D. MAHAFFEY and wife, MARGARET W. MAHAFFEY, Defendants

No. COA99-567

(Filed 18 April 2000)

**1. Appeal and Error— condemnation by DOT—issues other than title or area taken—immediate appeal not required**

Defendants in a condemnation action filed by DOT were not barred from raising on appeal the granting of DOT's 12(b)(6) motion and the denial of defendants' constitutional challenge to N.C.G.S. § 136-112 where the court held a hearing to resolve all

issues other than damages, granted DOT's motion and denied defendant's due process claim, and defendants did not appeal. An order resolving questions concerning title and area taken in a DOT condemnation hearing must be appealed immediately, but the issues in this case did not involve title or area taken.

## 2. Eminent Domain— inverse condemnation—existing DOT action

The trial court did not err by granting DOT's Rule 12(b)(6) motion to dismiss defendants' inverse condemnation claim. DOT had already filed a formal condemnation action and defendants' averment was unnecessary and redundant because the issue of compensation was to be decided in accordance with N.C.G.S. § 136-112.

## 3. Eminent Domain— statutory measure of damages— constitutional

N.C.G.S. § 136-112 does not violate the federal Due Process Clause and therefore does not violate our state law of the land clause.

## 4. Evidence— condemnation—sale price of another property—excluded

The trial court did not abuse its discretion in an action to determine damages for a DOT taking by refusing to allow testimony concerning the sales price of another property which was developed into a shopping center. The property in this case was zoned residential at the time of the taking and at the time of the trial while the shopping center was zoned agricultural or residential prior to the sale and is currently zoned residential, and the court decided that the properties were too dissimilar to allow testimony of the sale price of the shopping center property.

## 5. Evidence— condemnation—offer on property by developer—not competent on value when taken

The trial court did not err in a condemnation action by excluding the property owner's testimony about an offer he received on the property from a shopping center developer. The testimony was incompetent on the issue of the value of the property when it was condemned.

DEPARTMENT OF TRANSP. v. MAHAFFEY

[137 N.C. App. 511 (2000)]

Appeal by defendants from judgment dated 9 June 1998 and from order filed 21 September 1998 by Judge Russell G. Walker, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 22 February 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General David R. Minges, for plaintiff-appellee.*

*Max D. Ballinger for defendant-appellants.*

GREENE, Judge.

Curtis D. Mahaffey (Mr. Mahaffey) and Margaret W. Mahaffey (collectively, Defendants) appeal the entry of an order denying Defendants' motion for a judgment notwithstanding the verdict and in the alternative a new trial and the entry of a jury verdict and judgment in the amount of $20,000.00 in compensation for Defendants in this condemnation action instituted by the North Carolina Department of Transportation (DOT).

Defendants are the owners of an 11.32 acre tract of land (the Property) located at the intersection of Fleming Road and Country Woods Lane in Guilford County. The Property is improved with two single family dwellings and other buildings. The Property was zoned R-12 and R-40, which permit residential development.

On 5 November 1991, DOT took approximately one acre of the Property along Fleming Road, in order to widen Fleming Road in conjunction with construction of Bryan Boulevard, a four-lane controlled access expressway. The underlying action was filed on 5 November 1991, and the sum of $15,850.00 was deposited as just compensation. Defendants timely filed an answer, asserting a counterclaim for inverse condemnation and a defense that N.C. Gen. Stat. ch. 136, art. 9 is unconstitutional. Defendants also moved to continue the action until after Bryan Boulevard was built.

Defendants' inverse condemnation claim alleges they had "not been offered just compensation for the alleged taking of their property" and prayed the trial court to empanel a jury to try the issue of just compensation. Defendants' constitutional defense alleges N.C. Gen. Stat. ch. 136, art. 9 "is violative of the due process of law provisions of the Fourteenth Amendment to the Constitution of the United States and the provisions of Article 1, Section 19, of the North Carolina Constitution." Defendants also aver "[t]he measure of damages authorized by [section] 136-112 is inadequate, it ignores realistic

and customary marketing practices, and the statutes are unconstitutional in that they amount to a deprivation of property without due process of law."

In June of 1997, the matter came up for hearing pursuant to N.C. Gen. Stat. § 136-108 to resolve all issues other than damages. At the hearing, the trial court granted DOT's Rule 12(b)(6) motion, dismissed Defendants' inverse condemnation claim, and held the measure of damages set forth in N.C. Gen. Stat. § 136-112 was constitutional. Defendants did not appeal that order.

The record reveals Defendants purchased the Property in 1976 with knowledge that Bryan Boulevard was to be built in the vicinity. Mr. Mahaffey testified he believed that after Bryan Boulevard was built, Defendants could get the Property re-zoned to commercial. All of the immediate properties surrounding the Property are residential.

The parties in this action have differing opinions of the value and the highest and best use of the Property. Mr. Mahaffey and Defendants' real estate experts opined the highest and best use of the Property is as commercial property, and the Property's fair market value was $1,800,000.00 before the taking and $1,500,000.00 after the taking. Mr. Mahaffey testified he had been approached by the developers of the Cardinal Crossing Shopping Center (the Cardinal) who wanted to buy the Property. The trial court sustained DOT's objection and struck Mr. Mahaffey's statement. Thereafter, on several occasions, Mr. Mahaffey attempted to relay what the developers of the Cardinal had told and offered him. The trial court sustained DOT's objections to these statements and allowed DOT's motions to strike the statements.

Max Ballinger, Jr. (Ballinger), one of Defendants' real estate experts, testified the land upon which the Cardinal is located is a comparable piece of property to the Property. The Cardinal property is zoned for commercial use and is located on the corner of Inman Road and Fleming Road near the Property. The trial court sustained DOT's objections to Defendants' questions to Ballinger concerning the price per acre the Cardinal property sold for in 1988, and the sales price of the Cardinal property.

On *voir dire*, Ballinger testified the Cardinal property, which is 6.85 acres, sold for $163,467.00 per acre for a total price of $1,144,275.00. The Cardinal property, however, was zoned for a shop-

DEPARTMENT OF TRANSP. v. MAHAFFEY

[137 N.C. App. 511 (2000)]

ping center. It had been zoned agricultural or residential and was re-zoned to commercial use. Thereafter, a shopping center was built on the land.

DOT's experts opined the highest and best use of the Property is for residential development. J. Thomas Taylor (Taylor), a licensed general appraiser, testified for the DOT. As he customarily does in the process of appraising a piece of property, Taylor interviewed people with the Greensboro Planning Department and determined the Property would not likely be re-zoned from residential to commercial. Taylor testified the fair market value of the Property before the taking was $363,400.00. The land being valued at $193,700.00 or $17,000.00 per acre and the improvements (the buildings) being valued at $169,700.00. As bases for his appraisal, Taylor cited the Property was zoned residential at the time of the taking and at the time of the trial and cited comparable land sales of property zoned residential located near the Property. In his appraisal, the properties Taylor used to compare to the Property in arriving at his determination ranged from $16,759.00 per acre to $18,158.00 per acre, after adjustments.

The issues are whether: (I) Defendants have timely appealed the granting of the State's Rule 12(b)(6) motion and the denial of Defendants' due process motion; (II) Defendants have adequately stated a claim for relief; (III) N.C. Gen. Stat. ch. 136, art.9 is violative of due process; (IV) Ballinger was properly denied an opportunity to testify about the sales price of the Cardinal property;; and (V) Mr. Mahaffey's testimony about the interest of the Cardinal developers was admissible.

I

[1] DOT argues Defendants' appeal from the granting of DOT's Rule 12(b)(6) and the denial of Defendants' constitutional challenge to section 136-112 is not timely and, therefore, must be dismissed. We disagree.

The entry of an order resolving questions "concerning title and area taken" in a DOT condemnation proceeding must be immediately appealed. *Dep't of Transp. v. Rowe*, 351 N.C. 172, 176, 521 S.E.2d 707, 709 (1999). In this case, the issues raised by Defendants and addressed by the trial court in the section 136-108 hearing did not relate to title or area taken. Defendants, thus, are not barred from raising these issues in this appeal.

II

**[2]** Defendants argue the trial court erred in granting DOT's Rule 12(b)(6) motion to dismiss their inverse condemnation claim. We disagree.

In this case, DOT had already instituted a formal condemnation action prior to Defendants' answer. Although Defendants' inverse condemnation claim alleges they had "not been offered just compensation for the alleged taking of their property" and prayed the trial court to empanel a jury to try the issue of just compensation, Defendants' averment was unnecessary and redundant, because the issue of compensation was to be decided in accordance with the provisions of N.C. Gen. Stat. § 136-112. Defendants' answer failed to state a claim for which relief could be granted under inverse condemnation, because DOT had exercised its formal taking power and the provisions of section 136-112 would guide the determination of the proper amount of just compensation for the DOT's taking from the Property. *Midgett v. Highway Commission*, 260 N.C. 241, 250, 132 S.E.2d 599, 608 (1963) (where statute provides complete remedy, that remedy is exclusive), *overruled on other grounds, Lea Co. v. North Carolina Bd. of Transp.*, 308 N.C. 603, 616, 304 S.E.2d 164, 174 (1983). The trial court, thus, correctly granted DOT's Rule 12(b)(6) motion. *See Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).

III

**[3]** Defendants argue section 136-112 is violative of their federal and state due process rights because the "statutory limitation on the measure of damages effectively denies one whose property has been taken for road purposes by the [DOT] the 'just compensation' to which he is guaranteed."

Section 136-112 of the North Carolina General Statutes provides in pertinent part:

> The following shall be the measure of damages to be followed by the commissioners, jury or judge who determines the issue of damages [in a DOT taking]:
>
> (1) Where only a part of a tract is taken, the measure of damages for said taking shall be the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder

immediately after said taking, with consideration being given to any special or general benefits resulting from the utilization of the part taken for highway purposes.

N.C.G.S. § 136-112 (1999).

The United States Supreme Court, when addressing a constitutional challenge to a federal condemnation statute[1] similar to section 136-112, held the statute did not deny the owner just compensation within the meaning of the federal Due Process Clause. *Bauman v. Ross*, 167 U.S. 548, 574, 42 L. Ed. 2d 270, 283 (1897). As we are unable to discern any material difference between the statute before the *Bauman* court and section 136-112, we hold section 136-112 does not violate the federal Due Process Clause. It, therefore, follows our state constitution "law of the land" clause is not violated. *See Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 671, 509 S.E.2d 165, 175 (1998) (construing "law of the land" consistent with federal due process of law). The measure of compensation provided by section 136-112, thus, provides "just compensation" within the scope of both the federal and state constitutions. Consequently, we leave undisturbed the trial court's determination that section 136-112 is constitutional.[2]

IV

**[4]** Defendants argue the trial court erred in refusing to allow Ballinger to testify about the sales price of the Cardinal property. We disagree.

Sales prices of voluntary sales of property similar in nature, location, and condition to property being condemned is admissible as evidence of the value of the condemned land, so long as the other sales are not too remote in time. *City of Winston-Salem v. Cooper*, 315 N.C. 702, 711, 340 S.E.2d 366, 372 (1986). "Whether the properties are sufficiently similar to admit such evidence is a question to be deter-

---

1. The federal statute provided in pertinent part: "where the use of a part only of any parcel or tract of land shall be condemned . . . the jury, in assessing the damages therefor, shall take into consideration the benefit [that] the purpose for which it is taken may be to the owner . . . of such tract or parcel by enhancing the value of the remainder of the same." *Bauman v. Ross*, 167 U.S. 548, 557, 42 L. Ed. 2d 270, 277 (1897).

2. Defendants, in their brief to this Court, also contend there was no rational basis for the difference in the measures of compensation provided to landowners whose property is condemned under sections 136-112 and 40A-64. This is an equal protection argument not raised below, and thus, we will not address it for the first time on appeal. *See State v. King*, 342 N.C. 357, 364, 464 S.E.2d 288, 293 (1995); *State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988).

mined by the trial judge in his sound discretion," usually upon *voir dire, id.*, and such decisions will not be disturbed on appeal absent an abuse of that discretion, *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

The market value of the condemned property is to be determined on the basis of the conditions existing at the time of the taking. *Charlotte v. Recreation Comm.*, 278 N.C. 26, 33, 178 S.E.2d 601, 606 (1971). The exclusion of evidence of the voluntary sales price of an adjacent property is proper where the lands are markedly dissimilar in nature, condition, and zoning classification. *Barnes v. Highway Commission*, 250 N.C. 378, 394, 109 S.E.2d 219, 232 (1959). When property is unavailable for a particular use because of a zoning ordinance, the possibility the property may be re-zoned may be taken into consideration if there is a "reasonable probability of a change in the near future." *Id.* at 391-92, 109 S.E.2d at 230. If the possibility that the property may be re-zoned is "purely speculative," however, such possibility should not be considered. *Id.* at 392, 109 S.E.2d at 230.

In this case, the Property was zoned for residential use at the time of the taking and at the time of the trial. Although it had been zoned for agricultural or residential use prior to its sale, the Cardinal property is currently zoned for commercial use.[3] The trial court, in its discretion, decided the Cardinal property and the Property were too dissimilar to allow Ballinger to testify concerning the sale price of the Cardinal property, and Defendants have not demonstrated an abuse of that discretion. The trial court, thus, did not err in refusing to allow Ballinger to testify concerning the sales price of the Cardinal property.

V

**[5]** Defendants argue the trial court erred in sustaining DOT's objection to Mr. Mahaffey's testimony about what the developers of the Cardinal property told Mr. Mahaffey when the developers offered to purchase the Property. We disagree.

"A mere offer to buy or sell property is incompetent to prove its market value. The figure named is only the opinion of one who is not

---

3. There is no evidence in the record providing when the Cardinal property was re-zoned for commercial use. Defendants' expert speculated, without objection, that getting the Cardinal property re-zoned for commercial use was likely a condition of the sale.

bound by his statement and it is too unreliable to be accepted as a correct test of value." *Highway Comm. v. Helderman*, 285 N.C. 645, 655, 207 S.E.2d 720, 727 (1974); *see also Canton v. Harriss*, 177 N.C.11, 14, 97 S.E. 748, 749-50 (1919) (evidence of unaccepted offer to purchase condemned property held incompetent).

In this case, Mr. Mahaffey was allowed to offer testimony of what he thought the market value of the Property was on the date of the taking. He also was allowed to testify concerning his thoughts of the highest and best use of the Property. He was not, however, allowed to testify concerning the offer he received on the Property. This testimony was incompetent on the issue of the value of the Property when it was condemned, and thus, the trial court did not err in excluding it.

We note Defendants have made six additional arguments relating to seven assignments of error in the record. Defendants, however, failed to cite to any authorities in support of these arguments in violation of Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure, and thus, these assignments of error are deemed abandoned. N.C.R. App. P. 28(b)(5); *see also Byrne v. Bourdeaux*, 85 N.C. App. 262, 265, 354 S.E.2d 277, 279 (1987). Defendants also provided six additional assignments of error in the record that they did not argue in their brief to this Court. These assignments of error are likewise deemed abandoned. N.C.R. App. P. 28(b)(5) (assignments of error not set out in appellant's brief will be deemed abandoned); *see also State v. Davis*, 68 N.C. App. 238, 245, 314 S.E.2d 828, 833 (1984).

No error.

Judges MARTIN and TIMMONS-GOODSON concur.